RECEIVED
IN LAKE CHARLES, LA.

JAN 13 2015

TONY R. MOORE, CLERK
BY_____
              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PAUL A. MOORE, | * | CIVIL ACTION NO. 2:13-cv-2383 |
| Plaintiff, | * | |
| v. | * | JUDGE MINALDI |
| SHERIFF TONY MANCUSO, | * | |
| Defendant. | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment [Doc. 18], filed by Sheriff Tony Mancuso ("Mancuso"), to which Paul A. Moore ("Moore") has filed an Opposition [Doc. 22], to which Mancuso has filed a Reply [Doc. 23]. For the following reasons, Mancuso's Motion [Doc. 18] is hereby **GRANTED, IN PART,** and **DENIED, IN PART.**[1]

## FACTS & PROCEDURAL HISTORY

Moore worked for the Calcasieu Parish Sheriff's Office from February 15, 2006, to May 11, 2012, as a deputy in both the patrol and corrections divisions.[2] While assigned to the corrections division, Moore was injured when he broke up a fight between inmates.[3] As a result of the injuries sustained breaking up the fight, Moore required medical care and was temporarily placed on restricted duty.[4] Eventually Moore's injuries required surgery, and he was completely restricted from work during his recovery.[5]

---

[1] To the extent that Moore alleges a claim for failure to accommodate, the court was not briefed on this issue by either party. Should a party file a motion to continue trial and then submit this issue for summary judgment, the court will review the claim then.
[2] Compl. [Doc. 1] ¶ 5.
[3] *Id.* ¶ 6.
[4] *Id.*
[5] *Id.*

1

On April 24, 2012, Victor Salvador ("Salvador") was the Commander of Corrections for the Calcasieu Parish Sheriff's Office, and he was notified by Lieutenant James Weaver that Carrie DeRouen ("DeRouen"), another officer employed by the Calcasieu Parish Sheriff's Office, had brought sexual harassment allegations against Moore.[6] DeRouen alleged that Moore had called her a "whore" and a "cunt," and was harassing her at work.[7] On the same day that DeRouen made her verbal complaint, Moore was interviewed by Investigator William Scheufens ("Scheufens") from Internal Affairs.[8] As a result of the interview, Scheufens determined that Moore had harassed DeRouen during work hours and that Moore had used the derogatory language alleged by DeRouen.[9]

Salvador then decided to transfer Moore to a different division to separate Moore from DeRouen.[10] Moore was transferred to the Calcasieu Corrections Center and presented medical documentation to his supervisors that outlined his work restrictions.[11] However, Moore did not return to work between April 24, 2012—the date of the reassignment—and May 11, 2012—the date of his termination—and instead used accrued sick time.[12] On May 3, 2012, Scheufens received additional information from DeRouen regarding her interaction with Moore.[13] The findings of the Internal Affairs Division were entered on May 5, 2012, and Salvador received those findings shortly thereafter.[14] On May 8, 2012, Moore provided documentation to Salvador indicating the activities that he could and could not participate in at work without further injuring himself.[15] He was then reportedly told that he "was more of a liability than an asset."[16]

---

[6] Depo. of Victor Salvador [Doc. 22-2], at 7.
[7] *Id.* at 8-p; Depo. of Carrie Lynn DeRouen [Doc. 23-1], at 3.
[8] Depo. of William Arnold Scheufens [Doc. 22-3], at 6.
[9] *Id.* at 8.
[10] Pl.'s Ex. 4, Excerpts of Depo. of Daniel B. Burkhalter, Jr. [Doc. 22-5], at 7.
[11] Compl. [Doc. 1] ¶ 6.
[12] Aff. of Daniel Burkhalter, Jr. [Doc. 18-6] ¶ IV.
[13] Aff. of William Scheufens [Doc. 18-4] ¶ V.
[14] Aff. of Victor Salvador [Doc. 18-3] ¶ VI.
[15] Depo. of Victor Salvador [Doc. 22-2], at 20.
[16] Depo. of Paul Allison Moore [Doc. 18-7], at 25.

Moore was terminated on May 12, 2012.[17] The IA Case Report attached to Scheufens' affidavit indicates that Moore was terminated as a result of the investigation.[18]

On July 30, 2013, Moore filed suit in this court under 28 U.S.C. § 1331, federal question jurisdiction, and alleging violations under the Americans with Disabilities Act ("ADA") and violations of state law.[19] On October 22, 2014, Mancuso filed the instant motion, alleging that Moore's termination was not based on any physical limitations he may have had.[20]

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A dispute is said to be "genuine" only where "a reasonably jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the

---

[17] Depo. of Daniel B. Burkhalter, Jr. [Doc. 22-5], at 10.
[18] IA Case Report [Doc. 18-4].
[19] *Id.* ¶ 2
[20] Def.'s Mot. for Summ. J. [Doc. 18] ¶ VIII.

material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

### I. ADA Claim

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

#### A. Intentional Discrimination

To satisfy a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Milton v. Texas Dept. of Criminal Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)). The plaintiff's burden at all times is one of persuasion; therefore, the plaintiff must establish his *prima facie* case by a preponderance of the evidence. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981).[21]

Mancuso alleges that Moore cannot bring an action under the ADA because he cannot show that he was suffering from a disability within the meaning of the ADA.[22] The rest of the *prima facie* factors are not in dispute. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of [an individual]," "a

---

[21] Although *Burdine* sets out the specifics of the burden-shifting framework in the context of Title VII cases, both Title VII and ADA claims employ the *McDonnell Douglas* method of proof. *See Daigle*, 70 F.3d at 364.
[22] *See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. 18-2], at 11-13.

4

record of such an impairment," or "being regarded as having such an impairment . . . ." 42 U.S.C. §§ 12102(1)(A)-(C). "Major life activities," as defined by the ADA, include walking, performing manual tasks, standing, lifting, bending, and breathing. *Id.* § (2)(A). Whether an impairment is substantially limiting is determined in light of (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or expected permanent or long-term impact. *Milton,* 707 F.3d at 573.

Moore asserts that at the time he was terminated from his job, he had injuries to his foot, shoulder, and neck.[23] He further alleges that these injuries substantially limited his major life activities, including walking and performing manual tasks, on the date that he was fired.[24] According to the most recent doctor's note before Moore's termination, he was not allowed to walk for more than five minutes at a time.[25]

The cases cited by Mancuso to argue that Moore was not disabled at the time of his termination are not relevant to these facts. *See Blackard v. Livingston Parish Sewer Dist.,* 2014 WL 199629, *9 (M.D. La. Jan. 15, 2014) (reasoning that there was no disability where plaintiff and his nurse practitioner testified that the plaintiff was not disabled); and *Gray v. Walmart Stores, Inc.,* 2011 WL 1831780, *9-10 (E.D.N.C. May 12, 2011) (holding that merely listing medical complaints without providing detail on severity or type of medical limitations is insufficient to provide the basis for determining a person disabled within the meaning of the ADA, the current Equal Employment Opportunity Commission regulations provide that "the effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." 29 U.S.C. § 1630.2 (j)(1)(ix). Finally, in reviewing

---

[23] Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. 22], at 12. Typically, the court would give the plaintiff the opportunity to supplement his response to the motion for summary judgment with authenticated medical records, so they may be properly considered; however, having authenticated medical records would not be dispositive on this issue for reasons that will be discussed *infra*.
[24] *Id.*
[25] Return to Work Not. [Doc. 22-11], at 14.

the 2008 amendments to the ADA, the Fifth Circuit has stated that the duration of an impairment is only one of several factors used in determining if an individual was disabled. *See, e.g., Milton*, 707 F.3d at 573; and *Patton v. eCardio Diagnostics LLC*, 793 F.Supp.2d 964, 968 (S.D. Tex. 2011).

In light of the foregoing, the court finds that the assertion that Moore was not disabled within the meaning of the ADA is insufficient to support a motion for summary judgment on this issue at this time. There is a genuine dispute as to a material fact over whether impairments complained of by Moore substantially limited one or more of his major life activities.[26]

After the plaintiff establishes his *prima facie* case, the burden shifts to the defendant-employer to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000). The burden on the defendant to articulate a legitimate reason is one of production. *Burdine*, 450 U.S. at 254-55. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254.

Mancuso has submitted affidavits stating that Moore was terminated for inappropriate behavior at work. Specifically, an Internal Affairs investigation found that Moore had sexually harassed an ex-girlfriend while at work.[27] In his affidavit, Salvador states that Moore was terminated after admitting to calling DeRouen a "whore" and a "cunt," "among other

---

[26] At the minimum, there is a dispute as to whether Moore was "regarded as disabled" such that he could rely on the protections of the ADA. In reviewing the depositions of his commanding officers, it appears the officers were aware that Moore had an injury, and that the injury was limiting. *See* Depo. of Victor Salvador [Doc. 22-2], at 20; and Depo. of Daniel B. Burkhalter, Jr. [Doc. 22-5], at 9. An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been "subjected to a prohibited action because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12012(3)(A) (emphasis added).

[27] Aff. of William Scheufens [Doc. 18-4] ¶¶ IV-VI.

unwelcomed and harassing contact . . . ."[28]  A lesser sanction than termination was not recommended because of "the pattern of behavior exhibited by Deputy Moore."[29]

"Once the employer articulates [a legitimate, non-discriminatory reason] the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Burdine*, 450 U.S. at 254. The plaintiff must show both that the articulated reason given by the defendant is false, and that discrimination is the real reason for the employer's action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505 (1993). The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive. *Wilson v. Exxon Mobil Corp.*, 575 Fed.Appx. 309, 313 (5th Cir. 2014) (per curiam) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).

Moore asserts that the decision to terminate him was pretextual by characterizing the investigation by Internal Affairs as a "ruse."[30]  According to the memorandum in opposition, the investigation conveniently commenced when DeRouen received notice from Moore to remove her things from his residence.[31]  Moore is also suspicious because there are conflicting statements as to how the investigation was initiated; DeRouen testified that she complained to Internal Affairs, Salvador testified that DeRouen reached out to Lieutenant James Weaver, and Investigator Scheufens testified that the investigation began as the result of receiving a phone call from someone in administration.[32]

More troubling—according to Moore—is that during his interview with Internal Affairs, he was asked questions that were irrelevant to the allegations against him.[33]  He argues that no

---

[28] Aff. of Victor Salvador [Doc. 18-3] ¶ VI.
[29] *Id.* ¶ VII.
[30] Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. 22], at 19.
[31] *Id.* at 15.
[32] *Id.*
[33] *Id.* at 16-17.

discipline should have been taken against him because the incident complained of by DeRouen was an out-of-work conversation "between two former dating partners."[34] Finally, Moore complains that the Calcasieu Parish Sheriff's Office never produced any emails from their system to corroborate the results of the Internal Affairs investigation, that improper procedure was followed in that investigation, and that he was not insubordinate when told about his transfer.[35]

Moore has not satisfied his burden in showing that Mancuso's reason for terminating him was pretextual. Failure to follow disciplinary policies is not probative of discriminatory animus in the absence of proof that the plaintiff was treated differently than other similarly situated employees. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (citing *Upshaw v. Dallas Heart Grp.*, 961 F.Supp. 997, 1002 (N.D. Tex. 1997)). Therefore, the arguments that Moore makes with respect to the inadequacy of the procedures used during the investigation are irrelevant because there is not so much as an allegation that he was treated differently than other similarly situated employees.

The only bases offered by Moore to show the falsity of the proffered reason for Moore's termination are (1) the positive marks on Moore's performance evaluations, (2) that Moore did not call DeRouen a "whore" and a "cunt" at work as claimed—rather, this occurred after working hours—(3) the failure of the Calcasieu Parish Sheriff's Office to produce Moore's harassing emails, and (4) the unsupported, conclusory statement that Moore was not insubordinate when he learned of his transfer.

Moore attempts to show that the articulated reason for terminating him was pretextual based on his positive performance reviews.[36] From 2009 through 2011, Moore scored at either "meets"

---

[34] *Id.* at 17.
[35] *Id.* 17-18.
[36] Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. 22], at 19.

or "exceeds" standards on all of his performance appraisals.[37] The appraisals are offered to suggest that Moore did not have a series of complaints against him. However, Moore also acknowledges in his deposition that other women had previously filed complaints against him.[38]

Next, by stating that his out-of-work conversations and harassment of DeRouen were not sufficient grounds for termination, Moore seems to be making the argument that he should be held to some lesser standard of conduct because of his previous relationship with DeRouen. Whether the incident in question occurred during working hours or not, Moore fails to explain the three other pages in DeRouen's statement detailing harassing behavior by Moore.[39] The decision to terminate Moore was not based on one incident but on a pattern of harassment.[40] Salvador's affidavit states that Moore was terminated because Moore used obscene language directed at DeRouen while both were working at the sheriff's office—not that the language used was at work.[41] Moore does not deny that he called DeRouen, his coworker, a "cunt" and a "whore." Moore instead argues that using this language against a coworker is irrelevant at work as long as (1) it is used off-premises, and (2) it is used against a former dating partner. The undersigned does not find this position compelling.

While it is correct that Mancuso has not produced Moore's emails to corroborate the use of work computers to harass DeRouen, Moore is the one who bears the burden of proving that the reason for his termination was false and that Mancuso had discriminatory intent. In reviewing the documents submitted by Moore, there is not so much as an affidavit from Moore stating that

---

[37] Depo. of Victor Salvador [Doc. 22-2], at 15-18.
[38] Depo. of Paul Allison Moore [Doc.18-7], at 14-16; 21-23. There is some question about whether or not these complaints were substantiated, but Internal Affairs questioned Moore about at least two complaints from previous girlfriends. *Id.*
[39] *See* Voluntary Statement of Carrie DeRouen [Doc. 22-7].
[40] Aff. of Victor Salvador [Doc. 18-3] ¶ VI.
[41] *Id.*

he never sent DeRouen harassing emails. This unsubstantiated assertion is insufficient to defeat a motion for summary judgment. *See Little*, 37 F.3d at 1075.

The last facet of Moore's argument for pretext is that he was not insubordinate upon learning of his transfer. Again, Moore has produced no evidence to support this fact beyond stating that Mancuso has not shown that he was insubordinate. Furthermore, in Moore's deposition, he stated that he felt that his transfer was a punishment and had expressed to Salvador that he had problems with the warden at the Calcasieu Corrections Center.[42] For all of the above reasons, Moore has failed to satisfy his burden in showing that the articulated reason for his termination was pretextual. Accordingly,

**IT IS ORDERED** that Mancuso's Motion for Summary Judgment [Doc. 18] on the issue of intentional discrimination under the ADA be and hereby is **GRANTED.**

### B. Retaliation

The burden-shifting framework is the same for claims of intentional discrimination and retaliation under the ADA. *See Feist,* 730 F.3d at 454. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) he participated in an activity protected under the statute; (2) his employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Id.* (citations omitted). Making a request for a reasonable accommodation may constitute engaging in protected activity. *Tabatchnik v. Cont'l Airlines,* 262 Fed.Appx. 674, 676 (5th Cir. 2007) (unpublished) (per curiam) (citing *Jones v. U.P.S.,* 502 F.3d 1176, 1194 (10th Cir. 2007)). A plaintiff alleging retaliation may satisfy the causal connection element by showing "close timing between an employee's protected activity and an adverse action against him." *Feist,* 730 F.3d at 454.

---

[42] Depo. of Paul Allison Moore [Doc. 18-7], at 24.

10

Again, after the plaintiff has established a *prima facie* case and the employer has articulated a legitimate, non-discriminatory reason for termination, the plaintiff must show that the articulated reason is pretextual. *Burdine*, 450 U.S. at 254. The plaintiff accomplishes this by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citations omitted). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (citing *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)). Substantial evidence is of "such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Long*, 88 F.3d at 308 (quoting *Boeing Co. v. Shipmen*, 411 F.2d 365, 375 (5th Cir. 1969)).

Again, the plaintiff has not produced sufficient evidence for a reasonable person to decide that the reason he was terminated was pretextual. Therefore, to the extent that he raises a claim of retaliation under the ADA in his complaint, the court finds that there is no genuine dispute as to a material fact on this issue. Accordingly,

**IT IS ORDERED** that Mancuso's Motion for Summary Judgment [Doc. 18] on the issue of retaliation under the ADA be and hereby is **GRANTED**.

I.  **Louisiana Law Claim**

The Louisiana law against discrimination on the basis of disability mirrors the federal law. *Knapper v. Hibernia Nat. Bank*, 49 So.3d 898, 902 n.10 (La. Ct. App. 2010). It is a violation of Louisiana law to discharge a qualified person with a disability on the basis of that disability. LA. REV. STAT. § 23:323(B)(2).

To defeat a motion for summary judgment on an employment disability claim, the claimant must establish a prima facie case that (1) he has a disability, as defined by the statute; (2) he is qualified for the job; and (3) an adverse employment decision was made *solely* because of the disability. *Lindsey v. Foti*, 81 So.3d 41, 44 (La. Ct. App. 2011), *writ denied*, 85 So. 3d 92 (La. 2012) (emphasis added). It is not clear whether the *McDonnell Douglas* burden-shifting analysis applies to claims made under Louisiana law. *See Bell v. Hercules Liftboat Co., L.L.C.*, 524 Fed.Appx. 64, 67 n.10 (5th Cir. 2013).

In *Lindsey*, the plaintiff's disability caused him to have outbursts at work. *Lindsey*, 81 So.3d at 42-43. As a result of these outbursts, the plaintiff was terminated for misconduct. *Id.* at 43. The court of appeals affirmed the trial court's grant of summary judgment because even acknowledging that the disability caused the plaintiff's misconduct, the plaintiff had failed to show that he was terminated solely because of his disability. *Id.* at 45-46.

For the reasons discussed in Section I.A., *supra*, Moore has not satisfied his burden of showing a genuine dispute as to a material fact over whether he was terminated *solely* because of his disability. Therefore, summary judgment on the issue of discrimination under Louisiana law is appropriate.[43] Accordingly,

**IT IS ORDERED** that Mancuso's Motion for Summary Judgment [Doc. 18] on Moore's claim for discrimination under Louisiana Revised Statute § 23:323(B)(2) be and hereby is **GRANTED**.

## CONCLUSION

**IT IS ORDERED** that Mancuso's Motion for Summary Judgment [Doc. 18] on the issue of intentional discrimination under the ADA be and hereby is **GRANTED**.

---

[43] Louisiana law also prohibits the failure to reasonably accommodate an otherwise qualified person on the basis of a disability. LA. REV. STAT. § 23:323(B)(1). However, as noted above, the parties have not briefed the court on any reasonable accommodation claims, so such a claim under state law is still pending.

**IT IS FURTHER ORDERED** that Mancuso's Motion for Summary Judgment [Doc. 18] on the issue of retaliation under the ADA be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that Mancuso's Motion for Summary Judgment [Doc. 18] on Moore's claim for discrimination under Louisiana Revised Statute § 23:323(B)(2) be and hereby is **GRANTED**.

Lake Charles, Louisiana, this 13 day of Jan, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE