RECEIVED
IN LAKE CHARLES, LA.

NOV - 3 2015

TONY R. MOORE, CLERK
BY_____
            DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PAUL A. MOORE, | * | CIVIL ACTION NO. 2:13-cv-2383 |
| Plaintiff, | * | |
| v. | * | JUDGE MINALDI |
| SHERIFF TONY MANCUSO, | * | |
| Defendant. | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment (Rec. Doc. 32), filed by Sheriff Tony Mancuso ("Mancuso"). Paul A. Moore ("Moore") has filed an Opposition (Rec. Doc. 34), to which Mancuso has filed a Reply (Rec. Doc. 35). For the following reasons, Mancuso's Motion (Rec. Doc. 32) is hereby **GRANTED**.

## FACTS & PROCEDURAL HISTORY

Moore worked for the Calcasieu Parish Sheriff's Office ("CPSO") from February 15, 2006, to May 11, 2012, as a deputy in both the patrol and corrections divisions.[1] While assigned to the corrections division, Moore was injured when he broke up a fight between inmates.[2] As a result of the injuries sustained breaking up the fight, Moore required medical care and was temporarily placed on restricted duty.[3] Eventually Moore's injuries required surgery, and he was completely restricted from work during his recovery.[4] Subsequently, Moore returned to his position with the Calcasieu Sheriff's Prison, and he was provided reasonable accommodations.[5]

---

[1] Compl. (Rec. Doc. 1) ¶ 5.
[2] *Id.* ¶ 6.
[3] *Id.*
[4] *Id.*
[5] *Id.*; Pl.'s Resp. to Def.'s Mot. for Summ. J. (Rec. Doc. 34), at 7.

1

On April 24, 2012, Victor Salvador ("Salvador") was the Commander of Corrections for the CPSO, and he was notified by Lieutenant James Weaver that Carrie DeRouen ("DeRouen"), another officer employed by the Calcasieu Parish Sheriff's Office, had brought sexual harassment allegations against Moore.[6] DeRouen alleged that Moore had called her a "whore" and a "cunt," and was harassing her at work.[7] On the same day that DeRouen made her verbal complaint, Moore was interviewed by Investigator William Scheufens ("Scheufens") from Internal Affairs.[8] As a result of the interview, Scheufens determined that Moore had harassed DeRouen during work hours and that Moore had used the derogatory language alleged by DeRouen.[9]

Salvador then decided to transfer Moore to a different division to separate Moore from DeRouen.[10] Moore was transferred to the Calcasieu Corrections Center, under the supervision of Warden Burkhalter ("Burkhalter").[11] However, Moore did not return to work between April 24, 2012—the date of the reassignment—and May 11, 2012—the date of his termination—and instead used accrued sick time.[12] Moore asserted that he was unable to return to work after his transfer because of medical issues.[13] On May 3, 2012, Scheufens received additional information from DeRouen regarding her interaction with Moore.[14] The findings of the Internal Affairs Division were entered on May 5, 2012, and Salvador received those findings shortly thereafter.[15]

---

[6] Depo. of Victor Salvador ( Rec. Doc. 22-2), at 6-7.
[7] *Id.* at 8; Depo. of Carrie Lynn DeRouen (Rec. Doc. 23-1), at 3.
[8] Depo. of William Arnold Scheufens (Rec. Doc. 22-3), at 6.
[9] *Id.* at 8.
[10] Pl.'s Ex. 4, Excerpts of Depo. of Daniel B. Burkhalter, Jr. (Rec. Doc. 22-5), at 7.
[11] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Rec. Doc. 34), at 3.
[12] Aff. of Daniel Burkhalter, Jr. (Rec. Doc. 18-6) ¶ IV.
[13] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Rec. Doc. 34), at 3.
[14] Aff. of William Scheufens (Rec. Doc. 18-4) ¶ V.
[15] Aff. of Victor Salvador (Rec. Doc. 18-3) ¶ VI.

Moore stated that he received a telephone call from Burkhalter instructing him to meet with Burkhalter at the Calcasieu Corrections Center.[16] In his deposition, Burkhalter testified that during the meeting with Moore the two discussed Moore's limitations, and that Burkhalter told Moore he needed documentation from a physician of his limitations.[17] According to Moore, he obtained documentation indicating the activities that he could and could not participate in at work without further injuring himself on May 8, 2012, and provided the document to Burkhalter the following day.[18] Although Burkhalter did not recall receiving the document,[19] Salvador testified in his deposition that he received the document before Moore was terminated.[20] After submitting the document, Moore claimed he was told by Burkhalter that he was "more of a liability than an asset."[21] Moore was terminated on May 11, 2012.[22] The IA Case Report attached to Scheufens' affidavit indicates that Moore was terminated as a result of the investigation.[23]

On July 30, 2013, Moore filed suit in this court under 28 U.S.C. § 1331, federal question jurisdiction, and alleging violations under the Americans with Disabilities Act ("ADA") and violations of state law.[24] On October 22, 2014, Mancuso filed a Motion for Summary Judgment,[25] and on January 13, 2015, this court issued a Memorandum Ruling granting all parts of the Motion for Summary Judgment, except for the part concerning a failure to accommodate because neither party addressed the issue in their briefs.[26] On July 15, 2015, Mancuso filed the

---

[16] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Rec. Doc. 34), at 3.
[17] Depo. of Daniel B. Burkhalter, Jr. (Rec. Doc. 22-5), at 10.
[18] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Rec. Doc. 34), at 3.
[19] *Id.* at 4.
[20] Depo. of Victor Salvador (Rec. Doc. 22-2), at 20.
[21] Depo. of Paul Allison Moore (Rec. Doc. 18-7), at 25.
[22] Compl. (Rec. Doc. 1) ¶ 5.
[23] IA Case Report (Rec. Doc. 18-4).
[24] *Id.* ¶ 2
[25] Def.'s Mot. for Summ. J. (Rec. Doc. 18) ¶ VIII.
[26] Mem. Ruling (Rec. Doc. 26), at 1, 1 n.1.

3

instant motion to dismiss the failure-to-accommodate claims.[27] On August 5, 2015, Moore filed an Opposition to the instant motion, clarifying that the alleged failure to accommodate did not arise until the time of his transfer to the Calcasieu Correctional Center.[28]

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A dispute is said to be "genuine" only where "a reasonably jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

---

[27] Def.'s Mot. For Summ. J. (Rec. Doc. 32-2), at 8.
[28] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Rec. Doc. 34), at 2, 7.

## Failure to Accommodate

Both the ADA and Louisiana Employment Discrimination Law ("LEDL") prohibit employers from discriminating against disabled individuals by failing to make reasonable accommodations for "qualified" disabled individuals, unless such accommodations would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(a) (2012); LA. REV. STAT. § 23:323(B)(1). To prevail on a failure-to-accommodate claim, a plaintiff must prove: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability with its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Bernard v. EDS Noland Episcopal Day School*, 62 F. Supp. 3d 535, 543 (W.D. La. 2014) (quoting *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). "The Fifth Circuit has held that claims brought under LEDL are analyzed using the same framework and precedent as the ADA claims, leading to the same result." *Tribble v. Ouachita Parish Police Jury*, 939 F. Supp. 2d 626, 629-30 (W.D. La. 2013).

"Once an employee has made a request for an accommodation, the ADA's regulations state that 'it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999) (footnote omitted) (quoting 29 C.F.R. § 1630.2(o)(3)). However, there is no violation of the ADA "when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Id.* at 736. "Nothing in the regulations or the cases indicates to us that an employer must move with maximum speed to complete this process and preempt any possible concerns." *Id.* at 737 (footnote omitted).

When an employer is denied the opportunity to provide reasonable accommodation because of the actions of the employee requesting accommodation, and the employer was willing to initiate and engage in an interactive process in good faith regarding the request for reasonable accommodation, that employee may not prevail on a failure-to-accommodate claim. In *E.E.O.C. v. Agro Distribution, LLC*, the Fifth Circuit held that a truck driver who did not show up to work after requesting accommodation and was subsequently terminated could not recover under a failure-to-accommodate claim. 555 F.3d 462, 466, 472 (5th Cir. 2009). The truck driver's employer had provided reasonable accommodations in the past and did not refuse to continue providing such accommodations, but merely refused to allow the truck driver to abstain from the task at issue entirely. *Id.* at 466. The Fifth Circuit concluded that because the truck driver did not show up to help with the task, "[a]ny discussion of the accommodations that might have been provided or denied is mere speculation," and also noted that "[n]o evidence suggests that [the employer] would not have provided the same accommodation that [the truck driver] previously received." *Id.* at 471-72; *see also Loulseged*, 178 F.3d at 734 ("It is difficult to judge the reasonableness of accommodations when the employee withdraws before we can say with any authority what these accommodations would have been."); *see also Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011) ("Where an employee terminates the interactive process by voluntarily retiring, it is difficult to discern what measures may have been taken had accommodation discussions continued.").

The key issue in the aforementioned cases is not the reason for the absence of the employees, be it termination for a refusal to work or voluntary retirement, but the simple fact that those employers did not have the opportunity to provide reasonable accommodation as a result of the actions of the employees. Without such an opportunity, any attempt by the courts to evaluate

whether an employer made, or would have made, a reasonable accommodation is "mere speculation." According to Moore, any failure to accommodate did not arise until his transfer to the Calcasieu Correctional Center on April 24, 2012. However, Moore did not attend work from the time of the transfer until the date of his termination. Moore argues that he was unable to attend for medical reasons, and this may very well be. Regardless, it is undisputed that Moore was not present at work during the time period between the transfer and his termination, and thus there was no opportunity for the CPSO to provide reasonable accommodation at the Calcasieu Correctional Center. Moreover, the CPSO had made reasonable accommodations that satisfied Moore up until the time of the transfer, and there is no evidence that similar accommodations would not have been made at the Calcasieu Correctional Center.

Furthermore, there is insufficient evidence to show the CPSO was unwilling to initiate and engage in good faith in an interactive process with Moore upon his transfer to the Calcasieu Correctional Center. Burkhalter initiated a dialogue with Moore within weeks of Moore's transfer by calling him on the telephone to schedule a meeting. During the meeting, Burkhalter and Moore discussed Moore's limitations, and Burkhalter requested official documentation. The court finds this meeting is sufficient to demonstrate the CPSO's willingness to initiate and engage in an interactive process in good faith with Moore.

Moore argued that the CPSO was unwilling to engage in good faith in an interactive process, and that the reason for his termination was pretextual. First, Moore alleged that when he provided Burkhalter with the documentation of his limitations, Burkhalter informed Moore that he was "more of a liability than an asset." This unsubstantiated allegation is by itself insufficient to establish a genuine dispute as to a material fact as to whether Burkhalter participated in a good-faith interactive process, especially given the history of accommodation provided by the

7

CPSO. Second, Moore questioned the timing of the release of the IA report, the submission of the document of his limitations, and his termination, insinuating that the real reason for his termination was the request for accommodation, not his misconduct. The court previously determined that Moore did not satisfy the burden of showing that the articulated reason for his termination was pretextual, and the undersigned is not persuaded that decision merits reconsideration.

For the reasons discussed above, the court finds that Mancuso did not fail to make reasonable accommodations for known limitations, and thus Moore cannot prevail on a failure-to-accommodate claim under either the ADA or LEDL. Accordingly, Mancuso's Motion for Summary Judgment (Rec. Doc. 32) to dismiss the failure-to-accommodate claims will be **GRANTED.**

Lake Charles, Louisiana, this 2 day of Nov , 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE